UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────

TERRANCE BROWN HINES,

                          Petitioner,

    v.
                                                    9:16-CV-1078
DAVID A. STALLONE,                                  (TJM)
                          Respondent.

─────────────────────────────

APPEARANCES:

TERRANCE BROWN HINES
13-B-3372
Petitioner, pro se
Cayuga Correctional Facility
P.O. Box 1186
Moravia, NY 13118

HON. ERIC T. SCHNEIDERMAN              MICHELLE ELAINE MAEROV, AAG
Attorney for Respondent
Office of the Attorney General
120 Broadway
New York, New York 10271

THOMAS J. MCAVOY
Senior United States District Judge

## <u>DECISION AND ORDER</u>

## I.    INTRODUCTION

        Petitioner Terrance Brown Hines filed a petition for a writ of habeas corpus pursuant

to 28 U.S.C. § 2254 along with several exhibits.  Dkt. No. 1, Petition ("Pet.") at 1; Dkt. Nos. 1-

1 and 1-2, Exhibits.[1]  He raises nine grounds for federal habeas relief: the trial court erred by

not accepting petitioner into a "judicial diversion" program (Ground One); there was a

"confirmatory identification," but no "actual identification procedure" was "performed"

───────────────

        [1]  The cited page numbers for the petition and exhibits refer to those generated by the court's electronic
filing system.

(Ground Two); an officer's testimony identifying petitioner at trial should have been precluded (Ground Three); an informant was improperly shown a "single photo" of petitioner (Ground Four); the trial court improperly admitted into evidence "prejudicial hearsay concerning the vehicle driven at the time of these criminal actions" (Ground Five); the prosecutor failed to disclose before trial "what the informant was receiving for his cooperation with Law Enforcement or for his testimony against" petitioner (Ground Six); the evidence was legally insufficient and the verdict was against the weight of the evidence (Ground Seven); the trial judge erred by failing to recuse himself (Ground Eight); the sentence was harsh and excessive (Ground Nine); petitioner's motion to set aside the verdict, brought pursuant to New York Criminal Procedure Law ("CPL") §330.30, should have been granted (Ground Ten); and the transcripts were "fraudulent" and appellate counsel was ineffective (Ground Eleven). Pet. at 4-5, 7-9.

Respondent opposes the petition. Dkt. No. 5, Answer; Dkt. No. 5-1, Respondent's Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("R. Mem."); Dkt. Nos. 6, 6-1 and 6-2, State Court Record ("SR"); Dkt. No. 7-1, Transcripts; Dkt. No. 8, Declaration of Service. Petitioner filed a reply. Dkt. No. 10, Reply Affirmation in Support of Petition for Habeas Corpus ("Reply").

For the reasons that follow, the petition is denied and dismissed.

## II.    RELEVANT BACKGROUND

Petitioner challenges a November 7, 2013 judgment of conviction, following a non-jury trial before a Cayuga County Court judge, of two counts of third degree criminal possession of a controlled substance (N.Y. Penal Law §220.16(1)) and two counts of third degree criminal sale of a controlled substance (N.Y. Penal Law §220.39(1)). Dkt. No. 6 at SR 85,

Indictment; *People v. Hines*, 132 A.D.3d 1385, 1385 (4th Dep't. 2015).  He was sentenced to serve an aggregate term of ten years in prison followed by three years post-release supervision.  Dkt. No. 7-1, Sentencing Transcript at 28-29.[2]

Petitioner appealed, and on October 9, 2015, the Appellate Division affirmed.  *Hines,* 132 A.D.3d at 1385-88.  The New York Court of Appeals denied leave to appeal on January 12, 2016.  *Hines*, 26 N.Y.3d 1109 (2016).

The charges stemmed from petitioner's involvement in two sales of cocaine to a confidential informant on June 1 and June 11, 2012 in the city of Auburn in Cayuga County. *See* Dkt. No. 6-1 at SR 85; Dkt. No. 7-1 at 4-312, Trial Transcript; *Hines*, 132 A.D.3d at 1385-88.  Before each sale, the informant met with members of the Finger Lakes Task Force.  He was searched for contraband, given an audio recording device and buy money, and was taken to the locations were petitioner and the informant agreed to meet.  Petitioner drove a Pontiac Grand Prix to both meetings and picked up the informant.  Each time the informant gave petitioner $180.00 in exchange for an "eight ball" of cocaine.  Both meetings were monitored by members of the task force and, although the officers lost sight of the vehicle, they monitored the sales through the audio device the informant carried.  The informant was searched again after each sale, and he no longer possessed the buy money. Dkt. No. 7-1 at 84-92, 95-105, 137-56, 166, 190, 208-16, 230-36, 244-45, 264-86.  The specific facts are known to the parties and will be repeated only to the extent necessary to address petitioner's claims for habeas relief.

---

[2]  The cited page numbers for all transcripts refer to the original numbers appearing at the top right hand corner of each page.

## III.   DISCUSSION

### A.   Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. §§2254(d)(1), (2); *Cullen v. Pinholster*, 563 U.S. 170, 180-81, 185 (2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt."  *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'"  *Nevada v. Jackson*, __ U.S. __, 133 S. Ct. 1990, 1992 (2013) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see Metrish v. Lancaster*, __ U.S. __, 133 S. Ct. 1781, 1787 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'") (quoting *Richter*, 562 U.S. at 103)).

4

Additionally, the AEDPA foreclosed "'using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.'" *Parker v. Matthews*, 567 U.S. 37, 132 S. Ct. 2148, 2149 (2012) (per curiam) (quoting *Renico,* 559 U.S. at 779). A state court's findings are not unreasonable under §2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro*, 550 U.S. at 473.

Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "'clear and convincing evidence.'" *Schriro*, 550 U.S. at 473-74 (quoting § 2254(e)(1)). Finally, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]" *Johnson v. Williams*, __ U.S. __, 133 S. Ct. 1088, 1096 (2013).

**B.     Grounds One through Seven, Nine and Ten**

An application for a writ of habeas corpus may not be granted until a petitioner exhausts all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254 (b)(1)(A), (B)(I), (ii). The exhaustion requirement "is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings[.]" *Jimenez v. Walker*, 458 F.3d 130, 149 (2d

Cir. 2006) (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).

To satisfy the exhaustion requirement, a petitioner must do so both procedurally and substantively. Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in a federal habeas petition. Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (citations omitted). In other words, petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

In New York, "to invoke 'one complete round of the State's established appellate review process,' a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal." *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005) (quoting *O'Sullivan*, 526 U.S. at 845) (internal citation omitted). The leave application may be made in letter form. *See id.*

A petitioner satisfies the fair presentation requirement by: "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) (quoting *Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 194 (2d

6

Cir. 1982) (en banc)); *see Baldwin*, 541 U.S. at 33 ("Reese, however, has not demonstrated that Oregon law uses the words 'ineffective assistance' in the manner he suggests, that is, as referring only to a federal-law claim.").

In this case, petitioner raised all of his claims except for Ground 11 on direct appeal, and the Appellate Division rejected them. *Compare* Pet. *with* Dkt. No. 6-1 at SR 11-23, Brief of Appellant. He sought leave to appeal to the New York Court of Appeals. Dkt. No. 6-1 at SR 71, Leave Letter. Counsel stated, "[i]t is our contention that the Appellate Division, Fourth Department was incorrect as a matter of law" on "various issues." *Id.* But the only specific claim identified in the leave letter, and argued in detail, was his claim that the trial judge should have recused himself from "hearing this bench trial." *Id.; see* Pet. at 8 (Ground Eight). Because appellate counsel specifically argued only one claim at length in the leave letter, Grounds One through Seven, Nine and Ten were not fairly presented to the New York Court of Appeals and are unexhausted. *See McKinnon v. Superintendent, Great Meadow Corr. Fac.*, 422 F. App'x. 69, 75 (2d Cir. 2011) ("Because McKinnon failed to raise [a weight] claim before the New York Court of Appeals, it was not preserved for review by the federal courts."); *Galdamez*, 394 F.3d at 74-75 (holding that when a defendant files a leave letter to the New York Court of Appeals, attaching his appellate briefs, and requesting the Court to consider all the arguments in the appellate brief without specifying any particular issues, the defendant fairly presented all the claims in the Appellate Brief). The fact that counsel closed the leave letter by asking the Court of Appeals to "take a good hard look at these issues" does not change the result. *See Jordan v. LeFevre*, 206 F.3d 196, 198 (2d Cir. 2000) ("Arguing a single claim at length and making only passing reference to possible other claims

7

to be found in the attached appellate briefs" by requesting leave "[f]or all of these reasons and the reasons set forth in his Appellate Division briefs" does not "fairly apprise the state court of those remaining claims."); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (if a petitioner's leave application specifically requested review of only one claim, all other claims would be deemed procedurally defaulted, even though the petitioner included his appellate brief in which the other claims were raised).[3]

Respondent states that petitioner included a second claim in the leave letter, that the trial judge should have granted a hearing on petitioner's motion to suppress identification evidence. R. Mem. at 7. Taken as a whole, however, the references to a hearing on identification evidence appear to have been made not as a stand-alone ground for leave, but in support of petitioner's claim that the trial judge should have recused himself. *See* Dkt. No. 6-1 at SR 71.

Even if the leave letter could be interpreted to include the identification claims raised in Grounds Two, Three and Four of petitioner's federal habeas petition, these grounds would still be unexhausted. These claims were all premised solely on state law and, as argued, failed to alert the Appellate Division to the federal constitutional nature of the claims as required. Dkt. No. 6-1 at SR 15-16; SR 71; *see, e.g., Dotson v. Ercole*, No. 1:06-CV-7823, 2009 WL 1615997 at *2 (S.D.N.Y. Jun. 9, 2009) (stating that the "Constitution does not guarantee a right to advance notice of identification testimony"); *McCaskell v. Keane*, No. 1:97-CV-2999, 2001 WL 840331 at *17 ("Criminal Procedure Law § 710.30 represents a

---

[3] Liberally construing his reply, petitioner appears to argue that all of the grounds raised before the Appellate Division were properly exhausted because counsel stated in his leave letter that "[i]t is our contention that the Appellate Division, Fourth Department, was incorrect as a matter of law various issues [sic]." Dkt. No. 10 at 4. But based on the leave application in this case, that statement is insufficient to properly present all of the grounds raised on direct appeal to the New York Court of Appeals. *Jordan*, 206 F.3d at 198.

State rule of practice.  McCaskell has not articulated how this failure in any way resulted in a constitutional violation.").  Grounds One and Five, petitioner's weight of the evidence claim (part of Ground Seven), and Grounds Nine and Ten would also remain unexhausted because they, too, were premised solely on state law.  *See* Dkt. No. 6-1 at SR 11-12, 18-19, 21-23; *see Adams v. Robertson*, 520 U.S. 83, 89, n. 3 (1997) (per curiam) (concluding that "passing invocations of 'due process'" that "fail to cite the Federal Constitution or any cases relying on the Fourteenth Amendment" do not "meet our minimal requirement that it must be clear that a federal claim was presented.") (emphasis in original); *Smith v. Phillips*, 455 U.S. 209, 221 (1982) ("Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."); *Maxwell v. Greiner*, No. 1:04-CV-4477, 2008 WL 2039528 at *5 (E.D.N.Y. May 12, 2008) (holding that petitioner's "passing reference to a constitutional right is insufficient in light of the fact that his entire argument exclusively relies on and discusses New York state cases applying New York state aw").

Accordingly, Grounds One through Seven, Nine and Ten are unexhausted.  These claims are also procedurally defaulted because there is no remaining avenue by which petitioner could properly exhaust them.  He cannot now file a direct appeal in order to exhaust the claims because a defendant is "entitled to one (and only one) appeal to the Appellate Division."  *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001).  Petitioner also could not exhaust these claims by litigating a motion to vacate his conviction pursuant to New York Criminal Procedure ("CPL") §440.10 for two reasons.  First, the facts that would support the claims were apparent on the record, and "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct

appeal." *Id.* at 91 (citing CPL § 440.10 (2)(c); *see Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (holding that "even if no state court had applied section 440.10 (2)(c) to Clark's claim, the district court itself should have done so in the first instance pursuant to the exhaustion requirement for federal habeas."); *Sweet v. Bennett*, 353 F.3d 135, 140-41 (2d Cir. 2003) (applying CPL §440.10 (2)(c) to claims raised for the first time in federal habeas petition). Second, because the Appellate Division rejected the claims on direct appeal, a state court would have to deny the CPL §440.10 motion on that ground. *Hines,* 132 A.D.3d at 1385-1388; *see* CPL §440.10(2)(a) (a state court "must deny" a motion to vacate a judgment when "[t]he ground or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment, unless since the time of such appellate determination there has been a retroactively effective change in the law controlling such issue."). Because no remaining avenue exists in which petitioner could properly present his claims, Grounds One through Seven, Nine and Ten are deemed exhausted but procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991); *Aparicio*, 269 F.3d at 90.

Procedurally defaulted claims are not subject to habeas review unless a petitioner shows cause for the default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice, *i.e.*, that he is actually innocent. *House v. Bell*, 547 U.S. 518, 536-39 (2006); *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) ("Actual innocence means factual innocence, not mere legal insufficiency." (citation omitted)). To establish cause, petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Maples v. Thomas*, 565 U.S. 266, 132 S. Ct. 912, 922 (2012); *Coleman*, 501 U.S. at 753. If a

petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated.  *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) (referring to the "cause-and-prejudice standard").

Petitioner does not assert any basis for finding cause, and the Court discerns none. *See Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994) (concluding that petitioner did not satisfy the cause and prejudice showing where he did not give any reason for failing to properly exhaust his federal claim in state court).  He did not argue appellate counsel was ineffective for failing to fairly present these claims in the leave letter in any state court, and he does not make that argument now.  Pet; Reply; *see Carrier*, 477 U.S. at 488-89 (the "exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.") (internal citation omitted).  Because petitioner failed to establish cause, the Court need not decide whether he will suffer actual prejudice before foreclosing habeas review.  *Carrier*, 477 U.S. at 496; *Stepney*, 760 F.2d at 45.

Finally, petitioner has made no showing that he is actually innocent.  He raises several technical arguments regarding his conviction, and argues the evidence is insufficient, but he has not proffered any new evidence that would make a reasonable jury doubt his guilt.  *See Poindexter v. Nash*, 333 F.3d 372, 380 (2d Cir. 2003) (noting that the concept of actual innocence is distinct from the concept of legal innocence, and a petitioner whose "argument is a technical one" does not raise "a claim of 'actual innocence' as that term is used . . . in habeas jurisprudence generally"); *Williams v. Brown*, No. 1:08-CV-10044, 2010 WL 850182

at *3 (S.D.N.Y. Mar. 11, 2010) (rejecting actual innocence claim where "[t]he evidence adduced by [the petitioner] in his petition solely concerns certain alleged procedural irregularities . . . none of which casts any doubt on [the petitioner's] underlying guilt."); *see also Schlup*, 513 U.S. at 329 ("[A]ctual innocence . . . does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty.").

In sum, Grounds One through Seven, Nine and Ten are unexhausted and procedurally defaulted. Without a showing of cause and prejudice, or a fundamental miscarriage of justice, this Court must bar consideration of these claims, and they are denied and dismissed.[4]

---

[4] In any event, petitioner's weight and judicial diversion claims (Ground One and part of Ground Seven), his CPL §710.30 identification notice claim (Ground Three), and his claim that his CPL §330.30 motion should have been granted (Ground Ten), are grounded in state criminal procedure statutes and are not cognizable on federal habeas review. CPL §§ 216.05, 470.15 (5), 710.30; *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996); *Dotson*, 2009 WL 1615997 at *2. The sentencing claims (Ground Nine) are not cognizable because the sentence imposed was within the range prescribed by state law. Pet. at 8; *Lockyer v. Andrade*, 538 U.S. 63, 72-73 (2003); *Townsend v. Burke*, 334 U.S. 736, 741 (1948). Petitioner argued on direct appeal that his sentence exceeded that offered during plea discussions as punishment for going to trial. Dkt. No. 6-1 at SR 23; Pet. at 8, Reply at 4. The Appellate Division ruled that petitioner "failed to preserve that contention for our review because he did not raise the issue at the time of sentencing." *Hines*, 132 A.D.3d at 1387. To the extent petitioner raises this claim in his petition, the Appellate Division's express invocation of New York's preservation rule constitutes an adequate and independent state court ground for denying it and this Court may review it only if petitioner demonstrates cause for failing to preserve it and resulting prejudice or that the failure to review the claim would result in a miscarriage of justice. *Coleman*, 501 U.S. at 749-50. Petitioner has not made the required showing.
Grounds Two, Four and Five are based on alleged errors relating to the admission of identification and hearsay evidence at trial. *See* Pet. at 4-5, 7; Reply at 5-7, 9-10, 15-16. Petitioner's claims regarding the identification evidence do not rise to the level of a Constitutional violation. *Manson v. Brathwaite*, 432 U.S. 98 (1977). Moreover, "federal habeas corpus relief does not lie for errors of state law." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam) (citation and internal quotation marks omitted). Federal courts may grant habeas relief based upon state evidentiary errors only if the petitioner shows both an error by the state court and the "state court's erroneous conclusions about New York evidence law were so egregious as to implicate the Fourteenth Amendment's guarantee of due process," which is one of "fundamental fairness," and is "defined ... very narrowly." *Evans v. Fischer*, 712 F.3d 125, 133 (2d Cir. 2013) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). None of the alleged errors claimed by petitioner in Grounds Two, Four and Five meet this high standard. *Id.*; *Sides v. Senkowski*, 281 F. Supp. 2d 649, 653-64 (W.D.N.Y. 2003).
The Appellate Division ruled petitioner's conviction was "supported by legally sufficient evidence, i.e., the eyewitness testimony of the confidential informant and police officers and the forensic testimony establishing the existence of cocaine." *Hines*, 132 A.D.3d at 1385. That decision, supported by the record and entitled to

## C. Ground Eight

Petitioner next argues, as he did on direct appeal, that the trial judge was biased against him and should have recused himself. Pet. at 8; Reply at 16-18.

At a May 9, 2013 court appearance, petitioner explained that in 2009, he "filed a grievance" against the trial judge and did not think he would "have a fair hearing or fair shot in this courtroom[.]" Dkt. No. 7-1, May 9, 2013 Transcript at 3-4. The trial judge denied petitioner's recusal request, stating that he was not aware petitioner filed a grievance, and that information would not affect his judgment. *Id.* at 3-4.

On July 11, 2013, during a guilty plea colloquy, petitioner told the trial judge he was not satisfied with counsel. Dkt. No. 7-1, July 11, 2013 Transcript at 12. He explained that in 2009, he "took a plea" on an unrelated case before the same trial judge. *Id.* at 13. Petitioner claimed that in 2009, the trial judge "told [him] that information that was sealed at [his] grand jury proceeding was lifted for the District Attorney's Office to proceed with the information to get an indictment." *Id.* at 14. Petitioner claimed he had "information" that "the charges from that [grand jury] are still sealed even to this date and they don't even exist on my record[.]"

---

AEDPA deference, was not contrary to or an unreasonable application of Supreme Court precedent. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Dkt. No. 7-1 at 33-294. Petitioner's claim that the trial judge should not have credited the informant's testimony is not cognizable. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).

Finally, the Appellate Division's rejection of petitioner's *Brady/Giglio* claims (Ground 6) was not contrary to clearly established Supreme Court precedent. *Hines*, 132 A.D.3d at 1386. The challenged information was turned over in time for trial counsel to make meaningful use of it, and petitioner has not shown that the failure to turn the information over sooner undermined confidence in the verdict. Dkt. No. 7-1, Trial Transcript at 105-32, 165-204; *Wearry v. Cain*, __ U.S. __, 136 S. Ct. 1002, 1005-1006 (2016) (per curiam); *Giglio v. United States*, 405 U.S. 150, 153-54 (1972); *Brady v. Maryland*, 373 U.S. 83 (1963); *see United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001) ("we reiterate the longstanding constitutional principle that as long as a defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner."); *Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001) ("It is not feasible or desirable to specify the extent or timing of disclosure *Brady* and its progeny require, except in terms of the sufficiency, under the circumstances, of the defense's opportunity to use the evidence when disclosure is made. Thus disclosure prior to trial is not mandated.").

*Id.* Based on that information, petitioner believed he was "lied to by the Courts," and filed the grievance against the trial judge in 2009 based on that belief. *Id.* at 14-15. Petitioner claimed that he would not have pleaded guilty in the 2009 case had he known the trial judge lied to him. *Id.*

Petitioner expressed concern that the trial judge, whom he believed lied to him in 2009, determined there was "noting done illegally" in this case. Dkt. No. 7-1, July 11, 2013 Transcript at 13. He wanted trial counsel to seek an order allowing counsel to review the grand jury minutes. *Id.* Petitioner claimed counsel told him, "it doesn't matter," but petitioner disagreed. *Id.* at 13. Finally, petitioner stated he was pleading guilty in this case because the trial judge would not recuse himself. *Id.* at 15.

The trial judge then refused to accept the plea because petitioner was not satisfied with counsel, and he was not "going to set this case up for appeal." Dkt. No. 7-1, July 11, 2013 Transcript at 16. Petitioner replied that he already had "appeal issues" based on the denial of his request for judicial diversion. *Id.* The trial judge reiterated he would not accept petitioner's plea because petitioner was not happy with counsel. *Id.* at 16-17. Petitioner responded that he did not think his opinion of counsel's work would "actually hamper" his plea or sentence. *Id.* at 18. The trial judge responded that it "certainly does if you're not satisfied with [counsel's] services," and that fact was "enough for [the judge] to stop the proceedings[.]" *Id.* at 18.

On August 1, 2013, petitioner appeared in court with new counsel. Dkt. No. 7-1, August 1, 2013 Transcript at 2-3. Counsel explained that petitioner was interested in a bench trial, but that he wanted it to be held before a different judge. *Id.* at 3. The trial judge

explained that petitioner asked him to recuse himself on "a number of occasions," and the requests were denied. *Id.* at 4. He stated that he had "no bias or prejudice towards [petitioner] whatsoever," if petitioner wanted a bench trial, it would be before him, and he would not recuse himself. *Id.* at 4. Counsel spoke to petitioner, who confirmed he would "prefer to have a bench trial in front of" the trial judge even though counsel told him a jury trial was "more preferable to a defendant[.]" *Id.* at 5-7. The prosecutor conveyed the five-year plea offer to petitioner again, and petitioner rejected it. *Id.* at 6-7. Petitioner then waived his right to a jury trial, and was ultimately convicted. *Id.* at 6-12; Dkt. No. 7-1, Trial Transcript at 302-312.

On appeal, the Appellate Division ruled that "the court's discretionary determination to deny recusal was not an abuse of discretion." *Hines*, 132 A.D.3d at 1387 (citation omitted). That decision, entitled to AEDPA deference, does not warrant federal habeas relief.

"Due process guarantees an absence of actual bias on the part of a judge." *Williams v. Pennsylvania*, __ U.S. __, 136 S. Ct. 1899, 1905 (2016) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955) (internal quotation marks omitted)). The Supreme Court's precedents "set forth an objective standard that requires recusal when the likelihood of bias on the part of the judge is too high to be constitutionally tolerable." *Id.* at 1903 (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 872 (2009) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975) (internal quotation marks omitted)); *see also Liteky v. United States*, 510 U.S. 540, 555 (1994) (recusal required when judicial remarks "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible."). The question is not whether the judge is "actually, subjectively biased, but whether the average judge in his position is likely to be

neutral, or whether there is an unconstitutional potential for bias."  *Caperton*, 556 U.S. at 881 (citation and internal quotation marks omitted).

In this case, petitioner's claim of bias rests on his assertion that he filed a grievance against the trial judge in 2009.  Pet. at 8; Reply at 16-18.  He claims the trial judge should have recused himself because petitioner "questioned" the judge's "ethics."  Reply at 17.  But not "every attack on a judge ... disqualifies him" or her from presiding over a particular case. *Caperton*, 556 U.S. at 881 (quoting *Mayberry v. Pennsylvania*, 400 U.S. 455, 465 (1971)). The Supreme Court has explained "[w]e cannot assume that judges are so irascible and sensitive that they cannot fairly and impartially deal with resistance to their authority or with highly charged arguments about the soundness of their decisions."  *Ungar v. Sarafite*, 376 U.S. 575, 584 (1964).

The trial judge stated repeatedly that he was unaware petitioner filed a grievance. Dkt. No. 7-1, May 9, 2013 Transcript at 3-4; July 11, 2013 Transcript at 14-16; Aug. 1, 2013 Transcript at 3-4.  Before trial commenced, the judge stated that he had "no bias or prejudice towards" petitioner "whatsoever[.]"  Dkt. No. 7-1, August 1, 2013 Transcript at 3-4.  Despite the trial judge's refusal to grant petitioner's recusal motion, petitioner waived a jury trial and opted to have a bench trial.  *See id.* at 5-12.  Petitioner points to no unfairness occurring during the trial.  *See* Pet., Reply.  Finally, to the extent petitioner may be arguing that the trial judge's refusal to accept his plea shows bias, the record refutes that claim.  The trial judge stopped the plea proceedings after petitioner stated he was not satisfied with counsel's representation, not because petitioner told him he filed a grievance against the judge in

2009.  Dkt. No. 7-1, July 11, 2013 Transcript at 12-18.[5]

Under the circumstances of this case, petitioner's "allegations of bias" are "insufficient to establish any constitutional violation." *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821 (1986).  The Appellate Division's decision rejecting petitioner's bias claim was not contrary to or an unreasonable application of Supreme Court precedent.  *Williams*, 136 S. Ct. at 1905; *see Aetna Life Ins. Co.,* 475 U.S. at 821 ("only in the most extreme of cases would disqualification" based on allegations of bias or prejudice by a judge "be constitutionally required[.]").  Ground Eight is therefore denied and dismissed.

### D.    Ground Eleven

In Ground Eleven of his petition, petitioner claims that appellate counsel was ineffective for failing to file a motion to settle the transcript on appeal because the transcript was "fraudulent."  Pet. at 9.  His claim appears to center around the informant's testimony about the June 11, 2012 drug sale.  *See* Pet. at 9; Dkt. No. 1-2 at 2.

At trial, the informant testified that he met petitioner on June 11, 2012 in the Byrne Dairy parking lot in Auburn, New York, and got into petitioner's car.  Dkt. No. 7-1, Trial Transcript at 150.  They "exited the Byrne Dairy, made a left, went up Capitol [Street], then made another left and another left and came back on Franklin [Street]," where the informant

---

[5]  Petitioner argues in his reply that after reviewing the grand jury minutes, the trial judge improperly denied a hearing on the ground that the informant's identification of petitioner was confirmatory.  Reply at 17. According to petitioner, that decision shows bias because there was nothing in the grand jury minutes indicating the informant knew petitioner, and the informant was only "asked about the drug transaction" and named petitioner.  *Id.*  This argument is not in the original petition, and arguments "may not be made for the first time in a reply brief." *Diaz v. United States*, 633 F. App'x. 551, 556 (2d Cir. 2015) (quoting *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993)).  This rule "applies with the same force to pro se litigants." *Id.* (citing *Graham v. Henderson*, 89 F.3d 75, 82 (2d Cir. 1996)); *see Jones v. Artus*, 615 F. Supp. 2d 77, 84-85 (S.D.N.Y. 2009) ("District courts have held that habeas claims raised for the first time in a reply memorandum or traverse are not properly considered.") (citations omitted).  Additionally, this record-based claim was not raised on direct appeal (*see* Dkt. No. 6-1 at SR 20) and is therefore unexhausted and procedurally defaulted.  *Aparicio*, 269 F.3d at 91. In any event, the grand jury minutes refute petitioner's claim.  Dkt. No. 6-2 at SR 241-43.

17

got out of petitioner's car.  *Id.*  In summation, petitioner's counsel summarized that testimony, stating that there "was a lot of confusion about how the whole situation" happened, but that "[a]s [counsel] recall[ed]," the informant "kind of said that he walked up the street and got in the car."  *Id.* at 299.

Petitioner argues the transcript is inaccurate because the informant actually testified that petitioner "walked up Capitol Street" at some point during the June 11, 2012 drug sale.  Pet. at 9; Reply at 6, 15; Dkt. No. 1-2 at 2.  He appears to argue that by so testifying, the informant placed him in a different location than the police did during the June 11, 2012 transaction.  Reply at 15.  Liberally construing his papers, petitioner may also be arguing that the informant could not recall unspecified details of the June 11, 2012 sale.  *See* Pet; Reply; Dkt. No; 1-2 at 2.  He claims appellate counsel should have raised these arguments and moved to settle the record.  *See id.*  Petitioner's claims are unexhausted and without merit.

On January 15, 2015, appellate counsel stipulated that the record on appeal, including the transcripts, were correct and compete.  Dkt. No. 6-2 at SR 366-67, Stipulation of Correctness of Complete Record.  Sometime before March 9, 2015, petitioner contacted his trial counsel with his concerns about the transcript.  In a letter dated March 9, 2015, counsel responded, "I do clearly recall the CI stating that you 'walked up Capitol Street,'" and remembered that the informant "admitting that his testimony was heavily based on the pre-trial preparation done by the ADA and the Task Force."  Dkt. No. 1-2 at 2, Letter.  Counsel explained that to correct the record, petitioner would have to move for settlement of the record in the Cayuga County Court, and told petitioner to ask his appellate counsel to "conduct the settlement of the transcript."  *Id.*

On May 5, 2015, petitioner wrote to the Appellate Division.  Dkt. No. 1-2 at 4.  He

18

stated that "[w]hat was actually testified to by the informant at trial and what was actually typed for the record is completely different." *Id.* He referenced trial counsel's letter, including the alleged discrepancy regarding the informant's testimony, and claimed trial counsel referenced this discrepancy in his summation. Dkt. No. 1-2 at 4 (citing Trial Transcript at 299). Petitioner complained that appellate counsel "did not see any discrepancies with the record" and did not "know how this is important to" the appeal. *Id.* at 4. Petitioner asked that the appeal be stayed while he attempted to settle the record, and that appellate counsel be removed from his case. *Id.* at 5.

On May 13, 2015, Principal Appellate Court Attorney Kim Taylor responded to petitioner's letter, informing him of the Appellate Division's motion practice, rules and procedures. Dkt. No. 1-2 at 7-8. On June 3, 2015, petitioner filed a formal motion to remove appellate counsel from the case. Dkt. No. 6-2 at 369-76.[6] He complained that appellate counsel did not give him a draft copy of his brief before filing it and referred to the confidential informant as a "snitch" even though petitioner told him the use of that term was "unprofessional." *Id.* at SR 370. Petitioner further claimed he told appellate counsel the informant's trial testimony was changed from its original version to "collaborate the testimony of the testifying officers and this was done during the time the transcripts were prepared for review" by the Appellate Division, but appellate counsel did not move to settle the record or otherwise act on that information. *Id.* at SR 371-72; SR 374-76, Exhibits.

On July 7, 2015, the Appellate Division denied petitioner's motion for reassignment of appellate counsel, but granted petitioner an opportunity to file a pro se supplemental brief.

---

[6] This motion also appears at Dkt. No. 1-2 at 9-15.

*See* Dkt. No. 6-2 at SR 378.  Based on the record before this Court, it does not appear that petitioner did so.

New York State law has a specific procedure, a state writ of error coram nobis petition, for raising a claim that appellate counsel was ineffective.  *McKinney v. Burge*, No. 9:04-CV-1150 (GTS/DEP), 2009 WL 666396 at *39 (N.D.N.Y. Mar. 10, 2009); *Hust v. Costello*, 329 F. Supp. 2d 377, 379 (E.D.N.Y. 2004).  The coram nobis petition is the only way to exhaust a claim that appellate counsel was ineffective for federal habeas purposes.  *Garcia v. Scully*, 907 F. Supp. 700, 706-707 (S.D.N.Y. 1995).  Petitioner failed to raise his ineffective assistance of appellate counsel claim through a writ of error coram nobis to the Appellate Division and, because there is no time limit for filing a writ of error coram nobis in state court, that procedure is still available as a state remedy.  *Id.*  This claim is therefore unexhausted.

Section 2254 "prohibits federal courts from *granting* relief to an applicant who has not exhausted the remedies available in the courts of the State," but allows "federal courts to deny the petition, regardless of whether the applicant exhausted his state court remedies." *Abuzaid v. Mattox*, 726 F.3d 311, 321 (2d Cir. 2013) (emphasis in original, internal quotation marks omitted) (citing 28 U.S.C. § 2254(b)(1)(A), (b)(2)).  Unexhausted claims may be denied on the merits if the claims are "plainly meritless" (*Rhines v. Weber*, 544 U.S. 269, 277 (2005)) or "patently frivolous." *McFadden v. Senkowski*, 421 F. Supp. 2d 619, 621 (W.D.N.Y. 2006); *see* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  Because petitioner's claims fail under either standard, the Court will dispose of them.

To demonstrate constitutionally ineffective assistance of counsel, a petitioner must

show that counsel's performance fell below an objective standard of professional reasonableness, and but for counsel's alleged errors, the result of the proceedings would have been different, and as a result, petitioner suffered prejudice. *Premo*, 562 U.S. at 121-22; *Strickland v. Washington*, 466 U.S. 668, 694 (1984). "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Richter*, 562 U.S. at 791 (quoting *Strickland*, 466 U.S. at 687) (internal quotation marks and further citation omitted).

The *Strickland* test applies to claims of ineffective assistance of appellate counsel. To prevail, a petitioner must demonstrate: (1) appellate counsel's performance fell below an objective standard of professional reasonableness, and (2) but for appellate counsel's "unprofessional errors," the results of the proceedings would have been different, i.e., the error caused prejudice to the petitioner. *Smith v. Robbins*, 528 U.S. 259, 285-286 (2000); *Strickland*, 466 U.S. at 688, 694. When challenging the effectiveness of appellate counsel, a petitioner must show that counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994); *see Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000). A petitioner must show more than counsel's failure to raise a non-frivolous argument, because counsel is required to use professional judgment when deciding to concentrate on a few key issues while eliminating weaker arguments, and is not required to advance every argument urged by the petitioner. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983).

In this case, as appellate counsel likely recognized, each transcript was certified as accurate by the court stenographer. *See* Dkt. No. 7-1, May 9, 2013 Transcript, at 10; July 11, 2013 Transcript at 18; Aug. 1, 2013 Transcript at 12; Aug. 13, 2013 Transcript at 14; Aug.

21, 2013 Trial Transcript at 161; Aug. 22, 2013 Trial Transcript at 312. Even assuming the transcript was inaccurate in the manner petitioner alleges, he failed to demonstrate that the outcome of the appeal would have been different if counsel moved to settle the transcript.

The challenged part of the transcript has nothing to do with the June 1, 2012 sale. Whether petitioner walked up Capitol Street or, as the informant testified, drove up Capitol Street, the details of the informant's testimony regarding the June 11, 2012 sale, and the June 1, 2012 sale, were corroborated by the testimony of police officers and audio recordings of the transaction. *Hines*, 132 A.D.3d at 1385; Dkt. No. 7-1, Trial Transcript at 81-104, 139-56, 197-201, 208-86. Although petitioner appears to argue the informant did not remember details about the sales, his memory and the level of pre-trial preparation he received were tested on cross-examination. *See id.* at 166-204.

Because appellate counsel does not have to raise every claim urged by a petitioner on appeal, much less one with little chance of success, this Court cannot say on the record before it that appellate counsel was ineffective for the reasons urged by petitioner. *Smith*, 528 U.S. at 289; *Evitts*, 469 U.S. at 394; *Jones*, 463 U.S. at 751-752; *see, e.g., Lopez v. Fischer*, No. 1:05-CV-2558, 2006 WL 2996548 at *12 (S.D.N.Y. Oct. 16, 2006) ("petitioner cannot show that appellate counsel's failure to raise [meritless] claims on direct appeal renders his representation below an objective standard of reasonableness, nor can petitioner show that had these claims been presented on appeal, his outcome would have been any different").[7]

_____

[7] Petitioner asks the Court to "subpoena the original trial stenographer's transcripts and have a Federal stenographer retype the transcripts in order to prove that" testimony was "deliberately removed from the record to secure" his conviction. Reply at 18-19. He also requests a hearing to allow him to subpoena "all relevant parties for the purpose of establishing the correct record of testimony." *Id.* Petitioner's requests are denied. *See Schriro*, 550 U.S. at 479 (because petitioner "never presented" a particular claim to the Arizona courts, he

## IV.    CONCLUSION

**WHEREFORE**, it is

**ORDERED** that the petition, Dkt. No. 1, is **DENIED and DISMISSED;** and it is

**ORDERED** that no Certificate of Appealability ("COA") shall issue because petitioner

failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. §

2253(c)(2) requires;[8] and it is

**ORDERED** that the Clerk serve copies of this Decision and Order upon the parties in

accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: February 1, 2017

Thomas J. McAvoy
Senior, U.S. District Judge

---

"failed to develop [the] claim properly before the Arizona courts, and § 2254(e)(2) therefore barred the District Court from granting an evidentiary hearing on that basis."); *Nieblas v. Smith*, 204 F.3d 29, 31 (2d Cir. 1999) (Section 2254(e)(2) prohibits a district court from holding an evidentiary hearing where the habeas applicant "failed to develop the factual basis of a claim in State court proceedings" unless the applicant meets several stringent requirements.) (quoting 28 U.S.C. § 2254(e)(2)).

[8]  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, and (2) that the applicant has established a valid constitutional violation" (citation omitted))..